**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| Deosen Biochemical (Ordos) Ltd., | ) |
| *Plaintiff*, | ) |
| v. | ) |
| | ) Court No.: 25-00145 |
| United States, | ) |
| *Defendant,* | ) |
| and | ) |
| CP Kelco U.S., Inc., | ) |
| *Defendant-Intervenor*. | ) |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Lian Yang
Elio Gonzalez
Eric Xie
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel for Plaintiff*

Dated: June 26, 2026

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT........................................................................................................ 1

    A.    Defendant Fails to Show Commerce Properly Calculated Credit Expenses
        for Direct Delivery Sales ....................................................................... 2

    B.    Commerce's Determination to Use Partial AFA is Unsupported by
        Substantial Evidence and Contrary to Law............................................. 5

III.  CONCLUSION..................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABB Inc. v. United States*,
 355 F. Supp. 3d 1206 (Ct. Int'l Trade 2018) ...............................................................8

*AG der Dillinger Huttenwerke v. United States*,
 648 F. Supp. 3d 1321 (Ct. Int'l Trade 2023) ...............................................................9

*BMW of N. Am. LLC v. United States*,
 926 F.3d 1291 (Fed. Cir. 2019)...................................................................................9

*F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*,
 216 F.3d 1027 (Fed. Cir. 2000)...................................................................................9

*Hitachi Energy USA Inc. v. United States*,
 34 F.4th 1375 (Fed. Cir. 2022) ...............................................................................2, 8

*Hung Vuong Corp. v. United States*,
 483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) ...............................................................8

*Hyundai Steel Company v. United States*,
 589 F. Supp. 3d 1360 (Ct. Int'l Trade 2022) ...............................................................6

*Luscious Seafood LLC v. United States*,
 815 F. Supp. 3d 1356 (Ct. Int'l Trade 2025) ...............................................................5

*Mittal Steel Point Lisas, Ltd. v. United States*,
 491 F. Supp. 2d 1222 (Ct. Int'l Trade 2007) .......................................................3, 4, 5

*Mittal Steel Point Lisas, Ltd. v. United States*,
 502 F. Supp. 2d 1345 (Ct. Int'l Trade 2007) ...........................................................3, 4

*Mittal Steel Point Lisas, Ltd. v. United States*,
 548 F.3d 1375 (Fed. Cir. 2008)................................................................................4, 5

*Saha Thai Steel Pipe Pub. Co. v. United States*,
 605 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ...............................................................3

*SKF USA Inc. v. United States*,
 391 F. Supp. 2d 1327 (Ct. Int'l Trade 2005) ...........................................................2, 3

STATUTES

19 U.S.C. § 1677e(a)........................................................................................................5

19 U.S.C. § 1677e(a)(2)(A) .............................................................................................5

19 U.S.C. § 1677m(d) ..................................................................................................6, 7, 8

19 U.S.C. § 1677m(e) ........................................................................................................6

**OTHER AUTHORITIES**

*Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty
Administrative Review and Final Determination of No Shipments; 2022–2023*, 90
Fed. Reg. 22,240 (Dep't of Commerce May 27, 2025) ......................................................1, 4, 9

## I.      **INTRODUCTION**

Plaintiff Deosen Biochemical (Ordos) Ltd. ("Plaintiff" or "Deosen Ordos") replies to Defendant United States' ("Defendant") response brief (ECF Nos. 39 & 40) ("Def.'s Resp.").[1]  In its response brief, Defendant fails to demonstrate that its calculation of credit expenses was correct or that its questionnaire instruction to report the date of shipment clearly applied to Deosen Ordos rather than Deosen USA Inc. ("Deosen USA"), Deosen Ordos' affiliated U.S. importer.  Defendant also fails to demonstrate that the use of facts otherwise available with an adverse inference ("AFA") was supported by substantial evidence and in accordance with law.

Accordingly, Plaintiff respectfully requests that the Court hold that the Department of Commerce's ("Commerce") final results of the 10th administrative review of the antidumping duty ("AD") order on xanthan gum from China are unsupported by substantial evidence and otherwise not in accordance with law.  *Xanthan Gum From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2022–2023*, 90 Fed. Reg. 22,240 (Dep't of Commerce, May 27, 2025) ("Final Results"), P.R. 336, and accompanying Issues and Decision Memorandum ("IDM"), P.R. 327.

## II.     **ARGUMENT**

For the reasons below, Plaintiff respectfully asks the Court to reject Defendant's arguments and hold that (1) Commerce's calculation of credit expenses is unsupported by substantial evidence and contrary to law, and (2) Commerce's determination to use partial AFA is unsupported by substantial evidence and contrary to law.

---

[1] Defendant-Intervenor CP Kelco U.S., Inc. ("CP Kelco") did not file a response brief in opposition to Deosen Ordos' motion for judgment on the agency record.

**A.      Defendant Fails to Show Commerce Properly Calculated Credit Expenses for Direct Delivery Sales**

In its response brief, Defendant fails to demonstrate that Commerce's instruction in the initial Section C questionnaire to "Report the date of shipment from the factory or distribution warehouse to the customer" clearly applied to Deosen Ordos rather than Deosen USA with respect to direct delivery sales, *i.e.,* sales where goods were shipped directly from China to the final customers without stopping at Deosen USA's warehouse.  Defendant downplays that Commerce's instruction related to constructed export price ("CEP") sales made by Deosen USA and argues that this does not excuse Deosen from reporting shipment date from the Chinese factory for direct delivery sales.  Def's Resp. at 10.  But the ambiguity in Commerce's question demonstrates that Deosen reasonably understood Commerce's request to report shipment date to apply from Deosen USA's perspective.  That the questionnaire was addressed to Deosen Ordos is irrelevant because questions involving CEP sales necessarily require most if not all of the information to be supplied by the respondent's U.S. affiliate.  Further, Commerce's acceptance of shipment date for warehouse sales from Deosen USA's perspective contradicts its rejection of the proxy shipment date reported from Deosen USA's perspective for direct delivery sales.

Defendant states that where sales did not pass through a U.S. warehouse, Commerce's instruction required Deosen to report the shipment date from Deosen Ordos' factory.  Def's Resp. at 9.  But again, Commerce's ambiguous instruction in the questionnaire does not clearly specify that the shipment date requested is the shipment date from China.  The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has stated that "{c}larity regarding what information is requested by Commerce is important, especially in cases such as this where there was confusion as to whether or not requests for data were made and whether or not these requests were refused." *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022) (quoting *SKF USA*

*Inc. v. United States*, 391 F. Supp. 2d 1327, 1336 (Ct. Int'l Trade 2005)). "Commerce must clearly and definitively ask for what it wants." *Saha Thai Steel Pipe Pub. Co. v. United States*, 605 F. Supp. 3d 1348, 1363 (Ct. Int'l Trade 2022). It is unreasonable to fault Deosen for providing information based on its reasonable interpretation of an ambiguous instruction, particularly when Deosen was transparent from the beginning with the methodology it used to report the date of shipment in response to the initial Section C questionnaire.

Defendant disagrees with Deosen's argument that credit expenses should be calculated using Deosen USA's reported invoice date because prior to that point Deosen USA had not extended credit to the customer. Def's Resp. at 9. According to Defendant, this conflates the date of sale inquiry with a separate obligation to report shipment date. Def's Resp. at 9. This misunderstands Deosen's point and fails to address that credit expenses should be calculated only after Deosen USA began to accrue an opportunity cost, which occurs after it sold/invoiced the customer (which is also the date of sale in this review).

*Mittal Steel* involved a similar circumstance where Commerce determined it would be "inconsistent for Commerce to {} calculate credit expenses beginning on the date of shipment" where invoice date was used as the date of sale. *Mittal Steel Point Lisas, Ltd. v. United States*, 491 F. Supp. 2d 1222 (Ct. Int'l Trade 2007). In *Mittal Steel*, Commerce requested a voluntary remand, "recogniz{ing} that Mittal may not have begun to extend credit at the date of shipment (given its selling practice of invoicing its unaffiliated customers after shipping the merchandise from the foreign port, but not maintaining inventory in the United States)." *Id*. at 1222-23 (internal quotations omitted). On remand, Commerce determined, "it was appropriate to calculate credit expense from the date of invoice, rather than the date of shipment" because "it had used the date of invoice as the date of sale," and the CIT sustained Commerce's determination. *Mittal Steel*

*Point Lisas, Ltd. v. United States*, 502 F. Supp. 2d 1345, 1346-47 (Ct. Int'l Trade 2007). The Federal Circuit also opined that it was appropriate for Commerce to calculate credit expenses beginning on the invoice date because "record evidence shows that the material terms of sale were not set before the invoice date, and Mittal therefore retained control of the goods until the invoice date. Thus, no credit was extended to Mittal until the invoice date." *Mittal Steel Point Lisas, Ltd. v. United States*, 548 F.3d 1375, 1385 (Fed. Cir. 2008).

Likewise, here, Deosen reported that "invoice date is the first date on which both quantity and sales price become firm," and Commerce confirmed that invoice date was the appropriate date of sale. PDM at 16, P.R. 262 (unchanged in Final Results, P.R. 336, 327). Because the invoice date is the date on which the material terms of sale are set, no credit has been extended by Deosen prior to the invoice date. Thus, Commerce should have calculated credit expenses from the invoice date.

Defendant argues that *Mittal Steel* does not apply because it was an exceptional case justifying a deviation from Commerce's practice. Def's Response at 9-10. However, the facts in *Mittal Steel* are like the facts here and justify the same treatment. Specifically, Mittal shipped merchandise to its U.S. affiliate, which unloaded it and arranged for its delivery to U.S. customers without stopping at a U.S. warehouse. This transaction flow is like Deosen's direct delivery sales where it ships merchandise to final customers without stopping at Deosen USA's warehouses. The Court specifically considered that "{w}hether goods are shipped to the unaffiliated customers directly from the foreign port or whether they are warehoused in the United States is important to the determination of whether credit expenses begin accruing, and whether there are U.S. carrying costs." *Mittal Steel*, 491 F. Supp. 2d at 1230. As discussed above, the courts found that where material terms of sale were not set before the invoice date, credit was not extended until the invoice

4

date.  *Mittal Steel*, 491 F. Supp. 2d 1222; *Mittal Steel*, 502 F. Supp. 2d 1345; *Mittal Steel*, 548 F.3d 1375.  Defendant fails to explain why this case, where the material terms of sale were not set until the invoice date and where Commerce used invoice date as the date of sale, does not warrant the same treatment as *Mittal Steel*.

**B.    Commerce's Determination to Use Partial AFA is Unsupported by Substantial Evidence and Contrary to Law**

Defendant fails to demonstrate that Commerce properly relied on facts otherwise available under 19 U.S.C. § 1677e(a).  As discussed above, Deosen reported the date of shipment of direct delivery sales based on a reasonable interpretation of Commerce's questionnaire, which solicited information regarding Deosen USA's sales.  Because there was no date of shipment from Deosen USA's warehouse for direct delivery sales, Deosen was transparent that it was providing Deosen USA's invoice date as a proxy because it generally issues the invoice when the merchandise is delivered to the customer.  Commerce has a responsibility to adequately examine the record. *Luscious Seafood LLC v. United States*, 815 F. Supp. 3d 1356, 1365 (Ct. Int'l Trade 2025) (remanding Commerce's determination where the record did "not demonstrate that Commerce adequately considered record evidence consisting of the explanations Luscious Seafood provided in its questionnaire responses").  Deosen clearly explained the shipment date it was reporting in its questionnaire response, and thus, it did not withhold information from Commerce, such that the use of facts available was authorized under 19 U.S.C. § 1677e(a)(2)(A).

Further, Defendant fails to establish there was a gap in the record authorizing the use of facts available under section 1677e(a)(1).  Defendant claims that necessary information was missing from the record because Deosen did not provide the date of shipment from the factory in China even though the verification record demonstrates Deosen has access to this information. Def's Resp. at 13-14.  But this claim ignores that Commerce did not allow Deosen to submit this

5

information despite the ambiguity in Commerce's date of shipment request. Had Commerce clarified the information it was seeking in its ambiguous questionnaire, or had Commerce identified a deficiency and allowed Deosen an opportunity to remedy the deficiency, as it was obligated to do under 19 U.S.C. § 1677m(d), such information would not be missing from the record.

Moreover, the record contains the necessary information for Commerce to calculate the date of shipment from the factory in China. Commerce confirmed at verification that it typically took 30-35 days for Deosen Ordos' merchandise to arrive in the United States, and thus, the date of shipment can be determined based on the entry date, which is on the record. The Defendant's response to this fact is that the information would consist of estimated dates, rather than actual shipment dates. Def's Resp. at 14. But this is not a bar to using the information available on the record instead of resorting to facts otherwise available. In *Hyundai Steel*, the Court sustained Commerce's determination to not use facts otherwise available under section 1677e(a) where the record contained information on estimated fees. *Hyundai Steel Company v. United States,* 589 F. Supp. 3d 1360, 1363-64 (Ct. Int'l Trade 2022). Moreover, by statute Commerce "shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all applicable requirements established by" Commerce if the information is submitted timely, can be verified, is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination, an interested party has demonstrated that it acted to the best of its ability, and the information can be used without undue difficulties. *See* 19 U.S.C. § 1677m(e). These conditions are met here, including that Deosen acted to the best of its ability in responding to Commerce's ambiguous questionnaire, as argued elsewhere in this brief and in Deosen's Rule 56.2 Motion. *See* ECF No. 28.

6

Defendant also fails to justify Commerce's use of an adverse inference.  Defendant argues that Deosen did not inform Commerce that Deosen was unable to report the shipment date and that Commerce only discovered discrepancies at verification.  Def's Resp. at 15.  But Deosen was clear on how it was reporting shipment date.  In response to Commerce's request for date of shipment, Deosen reported the date of Deosen USA's invoice to unaffiliated customers and explained that the dates were the same because Deosen USA issued the invoice around the same time as it shipped merchandise to its customers.  *See* Deosen's Section C Questionnaire Response (Nov. 29, 2023), at 11-12, C.R. 94, P.R. 100.  Deosen further explained that it adopted this approach for direct delivery sales because Deosen USA does not separately record the shipment date in the ordinary course of business, and Deosen USA's invoice date approximated the date of delivery for such sales. *Id.*

Defendant argues that an adverse inference was warranted because Deosen had access to the necessary information and failed to demonstrate reasonable care in preparing its response to Commerce's request.  Def's Resp. at 15.  While Deosen Ordos does maintain the date of shipment from the factory in China in its records, Deosen understood that Commerce's ambiguous questionnaire requested information from Deosen USA, and thus, its response was from Deosen USA's perspective.  And even if shipment dates from the Chinese factory were indeed the correct dates to report, Commerce did not offer Deosen an opportunity to provide the shipment dates from the Chinese factory under section 1677m(d), instead faulting Deosen for Commerce's unclear questionnaire.

Defendant argues that Commerce was not required to provide Deosen an opportunity to remedy the deficiency under 19 U.S.C. § 1677m(d) prior to applying facts available because Commerce was not aware of the deficiencies until verification.  Def's Resp. at 16.  But again, this

7

ignores that Deosen was clear in how it was reporting the date of shipment from the start. Defendant cites *Hung Vuong* and *ABB Inc.* to argue that Commerce was not required to reopen the record after verification to comply with section 1677m(d).  Def's Resp. at 16-17 (citing *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) (*Hung Vuong*) and *ABB Inc. v. United States*, 355 F. Supp. 3d 1206 (Ct. Int'l Trade 2018) (*ABB Inc.*)).  Deosen has already distinguished these cases, *see* Deosen's 56.2 Motion (ECF No. 38) at 16-17, and Defendant offers no further explanation for why these cases are applicable under the facts here.

Furthermore, even if a deficiency is identified at verification, Commerce is not absolved from the requirements of section 1677m(d).  On appeal of the CIT's decision in *ABB Inc.*, the Federal Circuit held that even where "the deficiency in question was not determined until verification…{} the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified in the circumstances of this case."  *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022), *modified in* 2022 WL 17175134 (Fed. Cir. 2022).  Thus, Deosen was still entitled to notice and an opportunity to remedy the alleged deficiency, and Commerce failed to fulfill its obligations under section 1677m(d).

Finally, Defendant argues that because Commerce limited its application of partial AFA to only direct delivery sales, Commerce "reasonably tailored" the use of AFA.  Def's Resp. at 18. But Commerce's decision to not apply total AFA is not evidence that using partial AFA was somehow reasonable.  Commerce must still be legally permitted to rely on facts otherwise available, and the facts in this case do not support a finding that Commerce properly relied on facts otherwise available because necessary information was not missing from the record and Deosen did not withhold information requested.  Even if facts otherwise available was authorized, Commerce is still required to justify the use of an adverse inference.  As demonstrated herein and

in Deosen's 56.2 Motion, Commerce has not met the requirements under the statute to apply facts available or AFA, and thus, limiting the application of AFA to direct delivery sales does not make Commerce's determination any more reasonable.

Moreover, contrary to the Defendant's argument, Def's Resp. at 19, the use of the largest difference between the reported shipment date and payment date in Deosen's sales database, which was over 480 days, was not reasonable and grossly overstated the number of days during which Deosen accrued credit expenses. *See* Deosen Final Analysis Memorandum, dated May 20, 2025, at 4, C.R. 247, P.R. 332. That aberrational number pertained to warehouse sales rather than the direct delivery sales to which Commerce applied AFA, and it involved an invoice where the customer failed to follow the payment term and was grossly late in making the payment. *See* Deosen's Post-Verification Databases, C.R. 233-236, P.R. 314. Commerce's use of this aberrational number in applying AFA was unreasonable. *See BMW of N. Am. LLC v. United States,* 926 F.3d 1291, 1301 (Fed. Cir. 2019) (finding that Commerce's discretion in applying AFA "is not without its limits" and "'cannot be punitive, aberrational, or uncorroborated'") (quoting *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000)); *see also AG der Dillinger Huttenwerke v. United States*, 648 F. Supp. 3d 1321, 1332 (Ct. Int'l Trade 2023) ("Commerce has the discretion, where appropriate, to select the highest *non-aberrational* net price in applying AFA") (emphasis added).

## III.     CONCLUSION

For the reasons described above, Plaintiff respectfully requests that the Court remand the Final Results to Commerce.

Respectfully submitted,

Dated:  June 26, 2026

*/s/ Lian Yang*

Lian Yang
Elio Gonzalez
Eric Xie
Alston & Bird LLP
950 F Street NW
Washington, DC 20004
(202) 239-3490
lian.yang@alston.com

*Counsel for Plaintiff*

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Reply Brief in Support of Plaintiff's Motion for Judgment on the Agency Record, as computed by Alston & Bird LLP's word processing system (Microsoft 365), is 2,808 words.

Dated:  June 26, 2026

/s/Lian Yang
Lian Yang

On behalf of
Deosen Biochemical (Ordos) Ltd.

1